GEORGE G. GORDON, Plaintiff, *v.* HEWLETT HARBOR CONSTRUCTION, INC., Defendant.

Supreme Court, Special Term, Nassau County, November 14, 1950.

*Furst, Schwartz, Schwager & Landau* for plaintiff.

*Warren L. Schnur* for defendant.

COLDEN, J. Plaintiff moves for summary judgment in an action for specific performance of a contract for the sale of a one-family dwelling which defendant agreed to build and sell to plaintiff for $29,990. Delivery of the deed was to take place on September 15, 1950. The house here involved is one of a group of forty-nine which defendant contracted to construct, the contracts being substantially alike except for date of completion and delivery of title.

In August, 1950, defendant's president asked each of the purchasers to pay an additional $2,500 over and above the price agreed upon, claiming that the price of building materials had skyrocketed after the outbreak of the Korean war and that most of defendant's suppliers had refused to abide by their agreed prices for materials. Forty of the forty-nine purchasers have so agreed, but plaintiff refused to do so. Plaintiff's house has not been completed and he claims that defendant has refused to build it unless he agrees to pay the additional $2,500.

Defendant's president denies having told the plaintiff that defendant would refuse to close title or to complete the building unless plaintiff signed a modification agreement. He admits, however, that plaintiff was told " that because of the refusal of most of defendant's suppliers to abide by their contracts, defendant would be unable to obtain materials and labor to complete all the houses unless the purchasers agreed to an increase in price."

A " modification agreement " drawn by defendant and submitted to plaintiff contains, among other things, the recitals that the contract was entered into when " building materials were available to the Seller at costs commensurate with the selling price as contracted for; and WHEREAS, the costs of construction and labor have increased at a prohibitive rate     *     *     *

resulting in the Seller being unable to obtain the essential materials necessary to complete the said house at the selling price contracted for.''

Defendant's attorney, in a letter to plaintiff dated September 20, 1950, stated:

'' I repeat what I have stated many times in the past: my client is desirous of completing the homes for the original purchasers. However, because of rise in costs of labor, supplies and materials it is impossible for it to complete the buildings at the original contract price. Full page advertisements in the daily newspapers and the events of the past few days substantiate what my client and myself have been trying to explain to you all along, that it is impossible to obtain material and labor *at the prices contracted for as early as February of this year,* and that unless increases are given, work cannot continue on the various houses.

'' I trust you will do as a great majority of the purchasers have already done and agree to sign a modification agreement so that my client may continue with your house and have it ready for you as quickly as possible.'' (Emphasis supplied.)

These documents as well as defendant's opposing affidavits clearly indicate that there are no triable issues in this action. Defendant is not unable to obtain materials to fulfill its contract; it is merely unwilling to pay the increased cost of them. The sole reason why defendant has not performed its contract is because it has ceased to be as profitable as defendant had expected. There would be little point in making a contract at a stipulated price if one of the parties could avoid it when it became onerous. If the defendant wanted to be certain of a profit it could have drawn a different type of contract, for example, one providing for payment on a cost plus percentage basis. It did not do this and it cannot now shift its loss to the plaintiff. One would be naïve indeed to believe that had prices declined defendant would have passed the saving over to the plaintiff. Defendant cannot eat its cake and have it too.

Defendant claims, however, that operations were delayed by bad weather, a teamsters' strike and a railroad embargo. Giving defendant full credit for such delays up to the maximum provided for in the contract, to wit, ninety days, defendant would still have to complete the building by December 15, 1950. It does not offer to do this, but contends that if the building is not then completed '' plaintiff's sole right (if he does not choose to wait) will be to rescind the contract and to demand the return of his deposit.'' There is no such provision in the contract.

Paragraph 11 of the contract reads: " 11. It is understood that if the building to be completed on the premises shall not be completed by the date set for closing, as hereinafter provided, on account of strikes, inability to obtain materials, *or any other causes beyond the control of the Seller,* the closing of title hereunder shall be adjourned until such time as the Seller shall be able to complete the building, *but not to exceed ninety (90) days from the date set for closing.*" (Emphasis supplied.) Defendant thus made a firm agreement to finish the building within ninety days of the closing date regardless of the cause of delay. The only provision permitting defendant to refund plaintiff's deposit of $5,000 and be free of further liability is in the event that the seller cannot convey a marketable title and even then the plaintiff had the right to elect to take such title as the seller could give.

Clearly what prevented completion of this contract was not something beyond the control of the seller, but rather something peculiarly within its own control, to wit, its desire for an increase in price.

Plaintiff's motion for summary judgment is granted and defendant will be directed to convey this property to the plaintiff on December 15, 1950, whether the building has been completed or not. If incomplete at that time plaintiff will be allowed an abatement in the purchase price of an amount equal to what it will cost him to complete the contract, which sum will be determined by a reference. The referee will also hear and report on any other damages sustained by the plaintiff. Settle order on notice.